IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JPM96-C3 PRIME, LLC            *

        Plaintiff            *

        vs.            *     CIVIL ACTION NO. MJG-06-3300

L.L. BEAN, INC.            *

        Defendant            *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER
RE PRELIMINARY INJUNCTION

The Court has before it Plaintiff's Motion For Preliminary Injunction [Paper 2] and the materials submitted by the parties relating thereto.  The Court has held a hearing, including the taking of evidence, and had the benefit of the arguments of counsel.  The Court now issues this Memorandum and Order as its statement of reasons in compliance with Rule 65(d) of the Federal Rules of Civil Procedure.

I.    <u>BACKGROUND</u>

The pertinent facts can be set forth succinctly.  On April 12, 2001, Defendant L.L.Bean, Inc. ("Bean" or "Tenant") entered into a lease with Plaintiff JPM96-C3 Prime, LLC ("Landlord") for space for an L.L. Bean Outlet Store ("the Store") in a shopping mall (the "Center") in Perryville, Maryland.  The lease had a ten

year term including an option for early termination by Bean that

is the subject of the instant motion.

The lease includes a rider that provides, in pertinent part:

> In the event that Tenant's Gross Sales during
> the Fifth (5th) Rental Year of the Term do
> not exceed Three Million Five Hundred
> Thousand Dollars ($3,500,000.00)[1]. . . .
>
> Tenant shall have the option to terminate
> this Lease by giving advance written notice
> of its intention to terminate to Landlord
> **within sixty (60) days following the end of the Fifth (5th)
> Rental Year,** with the effective date of
> termination being the one hundred eightieth
> (180th) day following receipt of notice.

Pl.'s Mo. for Prelim. Inj., Ex. 4 (hereinafter cited as "Lease
Rider") at ¶ 10(emphasis added).

The lease defines the term "Rental Year" as:

> each twelve (12) consecutive calendar month
> period or portion thereof occurring during
> the Term with respect to which Annual Basic
> Rental is payable, provided that the First
> Rental Year shall commence on the Rental
> Commencement Date and shall end at the close
> of the twelfth (12th) full calendar month
> following the Rental Commencement Date.

Pl.'s Mo. for Prelim. Inj., Ex. 3 (hereinafter cited as "Lease")
at § 1.1(OO).

The lease defines the term "Rental Commencement Date" as:

> the earlier of (a) the forty-fifth (45th) day
> following the date the Premises are Ready for
> Occupancy (as defined in Section 7.3)) or (b)

---

[1] Landlord concedes that the sales level criterion for
operation of the option was met.

> Tenant's opening of its business in the
> Premises.

Id. at § 1.1(V).

The Rental Commencement Date pertinent hereto is August 27, 2001, the date that Bean opened its business in the leased premises.[2]

In a letter of September 18, 2001 to the Bean address specified for notice in the lease, Landlord erroneously stated that the Rental Year was August 1 to July 31.[3]  By letters of October 25 and November 28, 2001, Landlord correctly stated that the Rental Year was from September 1 to August 31[4].  These latter letters were sent to the Bean accounts payable department and not to the notice address specific by the lease.  Each of the letters included a statement indicating that the letter should not be considered as a modification of the lease

The lease provides that the First Rental Year ends "at the close of the twelfth (12th) full calendar month following the Rental Commencement Date."  Lease at § 1.1(OO) (emphasis added).

---

[2]  A date earlier than forty-five days after the premises were ready for occupancy.

[3]     This letter also erroneously stated that Bean was liable for base rent although this obligation was not to start until after a second entrance was completed.

[4]     The letter of October 25, 2001 also corrected the error with regard to base rent.

The first _full_ month after August 27, 2001 is September, 2001.
Therefore, the 12th _full_ calendar month after the Rental
Commencement Date is August of 2002.

Bean contends that Landlord should be bound by the statement
in the September 18, 2001 letter that the Rental Year ends July
31.  Landlord, on the other hand, contends that the later letters
corrected any misunderstanding so that the Rental Year ends
August 31.   The Court finds that, pursuant to the lease, the
Rental Year ends August 31 and that the specific 60 day notice
period is September 1 to October 30, 2006.

The following is a summary chronology of events relevant to
the instant motion:

| | |
|---|---|
| 7/30/06 | Bean sends Landlord an undated letter giving notice of termination under Rider Par 10, stating the intent to vacate 180 days. |
| 8/1/06 | Landlord receives the notice. |
| 8/18/06 | Landlord's attorney writes Bean stating that Bean's termination is not accepted and is void due to an alleged default by Bean without reference to any problem with the timeliness of Bean's notice. |
| 8/21/06 | Bean's attorney writes Landlord's attorney contending that the termination option is still available and reiterating Bean's intent to terminate. |
| 8/31/06 | Fifth Rental Year ends, triggering the Sixty Day notice period from September 1 to October 30, 2006. |

4

10/30/06        Sixty Day Notice period ends.

11/6/06         Landlord's counsel writes Bean's counsel
                stating that the July 30, 2006 notice was
                invalid because it was not given in the Sixty
                Day notice period between September 1 and
                October  30, 2006.

11/13/06        Bean's counsel writes Landlord's counsel
                stating that Bean considers its termination
                to have been effective because it was timely
                on Bean's theory that the Rental Year ended
                July 31 and that Landlord was not acting in
                good faith by taking the position that notice
                was untimely.

At the Preliminary Injunction hearing, the Court - with the
agreement of the parties - set the instant case for trial on
February 26.  Accordingly, the instant motion relates to a
requested Preliminary Injunction requiring Bean to continue to
operate the Store[5] from January 27 (the date that Bean contends
it is entitled to vacate) until the date of trial, February 26.


II.  DISCUSSION

There have been several verbal formulations of the standard
for a preliminary injunction or temporary restraining order.  It

_____

        [5]     There may be issues ultimately presented regarding the
precise nature of operation that Bean is obligated to conduct,
e.g. whether Bean must operate an 'outlet' as distinct from a
"clearance" facility.   However, Landlord is not currently
raising any such issues in regard to the instant motion and seeks
only an injunction temporarily preventing Bean from leaving the
Store "dark" prior to trial.

suffices for the present to note that the Fourth Circuit applies a balancing of the hardship test considering, in "flexible interplay," the following four factors:

> 1.   The likelihood of irreparable harm to the plaintiff without the injunction,
>
> 2.   The likelihood of harm to the defendant with the injunction,
>
> 3.   The plaintiff's likelihood of success on the merits, and
>
> 4.   The public interest (not a factor in the instant case[6]).

<u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189, 196 (4th Cir. 1977).  However, as stated by the Fourth Circuit, "the balance of the harm evaluation should precede the determination of the degree by which the plaintiff must establish the likelihood of success."  <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 813 (4th Cir. 1991)(citations omitted).


    A.   <u>Balancing of Hardship</u>

    The balance of hardship test can be viewed as the Court's balancing (1) any irreparable harm that would be sustained by Plaintiff if a preliminary injunction turns out to be erroneously

---

    [6]    There is no public interest of the type that warrants consideration in the preliminary injunction context, e.g. public health or safety concerns.

denied against (2) any irreparable harm that would be sustained by the Defendant if a preliminary injunction turns out to be erroneously granted.

There is no doubt that each side would suffer hardship not compensable by reasonably determinable money damages if the preliminary injunction ruling went against it and turned out to have been wrong.  While some of Landlord's hardship contentions may be overstated[7] there is no doubt that Landlord (directly and through the other tenants in the Center) would suffer the detriment of an empty store and loss of momentum if the Court wrongly allowed Bean to vacate and then had to order Bean to return.  Bean, on the other hand, would suffer hardship if wrongly forced to continue to operate an undesired store.

In the context of the period specifically at issue, the month between January 27 and February 27, the balance of the hardships test favors Landlord.  Under the circumstances, the Court concludes that in order to prevail, the Plaintiff must demonstrate at least a reasonable likelihood of success on the merits.

---

[7]     The permanent loss of Bean as a tenant would, no doubt, have very serious consequences for Landlord.  On the other hand, the loss resulting from a temporary vacancy (that is, if Landord succeeded at trial and got a permanent injunction forcing Bean to return to the Store) would be significant, but less.

B.    <u>The Merits of the Case</u>

The specific question now presented is a narrow one inasmuch as the trial is set for February 26, 2007.  Bean contends that it is entitled to vacate the Store on January 27, 2007, 180 days after the August 1, 2006 date on which landlord received the notice sent July 31, 2006.  Accordingly, if Landlord is correct as to this particular issues, it would be entitled to injunctive relief requiring Bean to continue operating the Store until February 27, 2007, the day after the commencement (and probable conclusion) of the trial of this case.

The Court finds that even assuming Bean would be held correct with regard to the effectiveness of the notice received August 1, 2006, Landlord has an overwhelming likelihood of success as to the date on which Bean would be entitled to vacate the premises.

There is no doubt that under the terms of the lease, the Fifth Rental Year ended August 31, 2006.  Accordingly, the Landlord was entitled to receive notice between September 1 and October 30, 2006 and Bean was entitled to vacate 180 days after such notice was received and not before.

The September 18, 2001 letter erroneously stating that the Rental Year ended July 31, expressly provided that it did not constitute a modification of the lease.  Thus, there is little,

8

if any, likely merit to Bean's contention that the September 18, 2001 letter served to change the terms of the lease.  The Court is not now rejecting Bean's contention that the erroneous statement in this letter could have an effect with regard to the early notice issue.  However, there is little likely merit to the position that this letter had the effect of permitting Bean to reduce the duration of the initial term of the lease from no less than five years plus 180 days[8] to five years plus 149 days.

    The Court is not now ruling upon Bean's contention that the August 1, 2006 (rather than September 1, 2006) receipt of the termination notice did not invalidate the notice.  However, if the August 1 notice is to be considered effective, it presently appears that it cannot be given premature effect so as to enable Bean unilaterally to shorten the initial term of the lease.  As now appears, if Bean is successful on the merits of the "effective notice" issue, it would prevail on the basis that Landlord in fact had the notice during the specified notice i.e. on and after September 1, 2006) and suffered no detriment by virtue of receipt on August 1, 2006.

---

    [8]    The duration of the term initial term assuming Bean gave effective notice of termination on the earliest possible date.

Accordingly, the Court concludes that Landlord has demonstrated a sufficient likelihood of success on the issue of whether Bean is require to remain operational through February 27, 2007 to be entitled to a Preliminary Injunction to that effect.  The matter of any extension of the Preliminary Injunction beyond the February 27, 2007, shall be considered in light of the trial proceedings.


IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1.  Plaintiff's Motion For Preliminary Injunction is GRANTED IN PART.

2.  A Preliminary Injunction consistent herewith shall be issued by separate Order.

3.  This case shall proceed pursuant to the Scheduling Order issued herewith.


SO ORDERED, on <u>Monday, January 8, 2007</u>


<u>        / s /        </u>
Marvin J. Garbis
United States District Judge


10