```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

JPM96-C3 PRIME, LLC              *

         Plaintiff               *

         vs.                     *   CIVIL ACTION NO. MJG-06-3300

L.L. BEAN, INC.                  *

         Defendant               *

*    *    *    *    *    *    *    *    *
```

## MEMORANDUM OF DECISION

This case was tried before the Court without a jury. The Court has heard the evidence, reviewed the exhibits, considered the materials submitted by the parties and had the benefit of the arguments of counsel. The Court now issues this Memorandum of Decision as its findings of fact and conclusions of law in compliance with Rule 52(a) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND

On April 12, 2001, Defendant L.L.Bean, Inc. ("Bean") entered into a lease (the "Lease") with Plaintiff JPM96-C3 Landlord, LLC ("Landlord") for space for an L.L. Bean Outlet Store ("the Store") in a shopping mall (the "Center") in Perryville, Maryland. The lease had a ten-year term commencing with the date Bean opened the premises for business, August 27, 2001, with an

option for early termination exercisable by Bean under specified conditions. Bean contends that it effectively exercised its option to terminate the Lease as of February 27, 2007, some four and a half years prior to the conclusion of the ten year term. Landlord contends that Bean did not effectively exercise its option to terminate and, therefore, must continue to operate its store until the full ten-year term is concluded.

The Lease required that Bean operate a factory store "selling products typically sold in all or substantially all of [Bean's] factory stores nationwide, at prices that are substantially similar to other L.L. Bean Factory Outlet stores." Lease ¶ 1.1 (K)(0); 4.1. Landlord contends that Bean failed to meet its operational obligations by operating a clearance center rather than a factory store.

Specifically, Landlord contends that Bean did not sell at the Center products typically sold in Bean's other factory stores, particularly bicycles and boats. Landlord further contends that Bean used a "clearance sale" type of pricing for essentially all products sold at the Center that was different from and typically resulted in lower prices than charged in other Bean factory stores.

Landlord seeks to have the Court grant injunctive relief requiring Bean to operate a factory store in compliance with the

2

Lease product and pricing provision during the remaining term of the Lease.

The case presents, therefore, the following issues for resolution:

1. Did Bean effectively terminate the Lease as of February 27, 2007?

2. If not, what injunctive relief should be granted with regard to the product and pricing requirements for the remaining term of the Lease?

These issues shall be addressed in turn.

## II. DISCUSSION

### A. Lease Termination Issue

#### 1. Lease Provisions

The Rider to the Lease provides in pertinent part:

> In the event that Tenant's Gross Sales during the Fifth (5th) Rental Year of the Term do not exceed Three Million Five Hundred Thousand Dollars ($3,500,000.00)[,][1]. . .
>
> [t]enant shall have the option to terminate this Lease by giving advance written notice of its intention to terminate to Landlord **within sixty (60) days following the end of the Fifth (5th) Rental Year,** with the effective date of termination being the one hundred eightieth (180th) day following receipt of notice.

Lease Rider at ¶ 10(emphasis added).

---

[1] Landlord concedes that the sales level criterion for operation of the option was met.

The Lease defines the term "Rental Year" as:

> each twelve (12) consecutive calendar month period or portion thereof occurring during the Term with respect to which Annual Basic Rental is payable, provided that the First Rental Year shall commence on the Rental Commencement Date and shall end at the close of the twelfth (12th) full calendar month following the Rental Commencement Date.

Lease at § 1.1(OO).

The Lease defines the term "Rental Commencement Date" as:

> the earlier of (a) the forty-fifth (45th) day following the date the Premises are Ready for Occupancy (as defined in Section 7.3) or (b) Tenant's opening of its business in the Premises.

Id. at § 1.1(V).

The Rental Commencement Date pertinent hereto is August 27, 2001, the date that Bean opened its business in the leased premises.[2]

### 2.  Termination Notice Period

Under the Lease, Bean could exercise its option to terminate

> By giving advance written notice of its intention to terminate to Landlord within sixty (60) days following the end of the Fifth (5th) Rental Year.

Lease Rider at ¶ 10.

---

[2] A date earlier than forty-five days after the premises were ready for occupancy.

The First Rental Year commenced August 27, 2001. Therefore, the First Rental Year ended August 31, 2002 - the end of the twelfth full calendar month following August 27, 2001. The Fifth Rental Year, therefore, ended August 31, 2006. Accordingly, Bean had to give written notice of its intention to terminate to Landlord within 60 days following August 31, 2006, *i.e.*, within the period September 1 to October 30, 2006.

### 3. Chronology of Events

The following chronology sets forth the pertinent events:

| | |
|---|---|
| 7/30 | Bean sent Landlord an undated letter giving notice of termination. |
| 8/01 | Landlord received the notice. |
| 8/01 | Landlord was aware that the notice had been received a month before the end of the Fifth Rental Year and decided not to do anything to put Bean on notice of a possible timeliness issue. |
| 8/10 | Jeremy Serwer (working with Landlord in regard to the Center) called an appropriate Bean employee and left a message that they had just received Bean's letter giving notice of termination and wished to discuss the decision. |
| 8/16 | Serwer and Zane Schatzer (Bean Employee) had a telephone conversation in which Serwer asked if Bean had converted the store to a clearance center and also asked what could be done to get Bean to stay. |
| 8/18 | Landlord's attorney wrote Bean stating that Bean's termination was not accepted and was void due to Bean's default in regard to the Lease's product and pricing requirements without reference to any problem with the timeliness of Bean's notice. |

| | |
|---|---|
| 8/18[3] | Schatzer called Serwer and stated that Bean intended to terminate the Lease. |
| 8/21 | Bean's attorney wrote Landlord's attorney denying that Bean was in default of the Lease, contending that the absence of any default was not a condition to termination and confirming Bean's intention to terminate. |
| 8/31 | Fifth Rental Year ended, triggering the sixty day notice period from September 1 to October 30, 2006. |
| 9/01 to 10/31 | No communication between Landlord and Bean. |
| 11/6 | Landlord's attorney wrote Bean's attorney stating that Notice was ineffective because it was not given between September 1 and October 30, 2006. |

### 4. Waiver Contentions

Bean contends that Landlord waived the notice period conditions to termination by virtue of:

1. Sending a September 18, 2001 letter to Bean stating, erroneously, that the Rental Year under the Lease was August 1 to July 31, and

2. Misleading Bean by not mentioning the notice period issue until after it was too late for Bean to cure the problem.

These contentions shall be discussed herein, in turn.

### a. Erroneous Letter

In a letter of September 18, 2001 to the Bean address specified for notice in the Lease, Landlord erroneously stated that the Rental Year was August 1 to July 31.

---

[3] Precise date not certain, but immaterial.

**Bean seeks to rely upon this erroneous statement in the letter as either modifying the Lease or as providing a basis for justifiable reliance by Bean.**

**The letter of September 18, 2001 included the statement:**

> **This letter and attached schedules are provided to you for convenience or reference only.  Any terms of the Lease represented here or in the attached schedules are not intended to define, limit, modify or amplify in any way the meaning of any provision of the lease.**

**Accordingly, the letter does not constitute an amendment of the Lease or a waiver of any of its provisions.**

**Nor does the letter provide a reasonable basis for reliance by Bean on the statement that Rental Years ended July 31.  An examination of the September 18, 2001 letter reveals that it is internally inconsistent, referring to Rental Years as ending July 31 but the term of the lease as ending August 31, 2011. Moreover, it is apparent that the September 18, 2001 letter is referring to some lease other than the Lease between Bean and Landlord because every reference to a section is erroneous.  For example, the "rental year" provision is said to be at Article II, Section 2.02 but in the Lease it is at Article I, Section 1.1 (OO).  A reasonable careful reading of the September 18, 2001 letter would have alerted a reasonable person in Bean's position that the letter could not be relied upon.**

Accordingly, even without consideration of later letters correcting the errors,[4] the Court finds that there could not be reasonable reliance upon the erroneous statements in the September 18, 2001 letter.

      b.   <u>Misleading</u>

The Court does not find that Landlord or its agents engaged in any conduct that improperly misled Bean or could be relied upon to constitute a waiver of the notice timing provision at issue.

Bean misread the Lease, and Landlord had no duty to inform its tenant of the error. Landlord did not affirmatively mislead Bean and did not provide anything that can be seized upon as constituting an agreement to accept the notice as timely.

In <u>Chesapeake Bank of Maryland v. Monro Muffler/Brake, Inc.</u>, 891 A.2d 384 (Md. App. 2006), a lessee claimed detrimental reliance upon a lessor's correspondence that did not advise that a renewal deadline had passed. The <u>Chesapeake</u> court stated:

> We are not persuaded that the [lessor's] failure to give [lessee] notice that the deadline for extending the lease has passed supports [lessee's] equitable argument. The

---

[4] By letters of October 25 and November 28, 2001, Landlord correctly referred to the Lease, correctly stated that the Rental Year was from September 1 to August 31 and corrected the base rent statement. However, these letters were sent to Bean's accounts payable department and not to the notice address specified in the Lease. The Court will assume that they were not, in fact, available to the Bean personnel considering the September 18, 2001 letter.

>       [lessor] did not have a duty to inform
>       [lessee] that the deadline was approaching,
>       or that it had passed . . . .  The [lessor's]
>       failure to assist [lessee] in remembering the
>       August 2 deadline does not serve as an
>       equitable basis for extending the lease in
>       spite of [lessee's] oversight.

Id. at 398 (internal citations omitted).

The Court concludes, therefore, that Bean cannot avoid the notice timeliness issue by virtue of any act or failure to act on Landlord's part.  Accordingly, the issue must be resolved on the merits.

### c.   Effectiveness of the Notice

The Court holds that the notice given by Bean in the instant case was effective to terminate the Lease.

The pertinent Lease provision states:

>       In the event that Tenant's Gross Sales during
>       the Fifth (5th) Rental Year of the Term do not
>       exceed Three Million Five Hundred Thousand
>       Dollars ($3,500,000.00)[,]. . . .
>
>       [t]enant shall have the option to terminate
>       this Lease by giving advance written notice
>       of its intention to terminate to Landlord
>       within sixty (60) days following the end of
>       the Fifth (5th) Rental Year, with the
>       effective date of termination being the one
>       hundred eightieth (180th) day following
>       receipt of notice.

Lease Rider at ¶ 10.

The option to terminate is not available unless and until the sales condition is met: that Tenant's Gross Sales for the Fifth Rental Year do not exceed $3,500,000.  Although all

concerned were well aware that Bean was going to have Fifth Rental Year sales below the threshold, the condition could not be, and was not, met until after the close of the Fifth Rental Year, i.e., until after August 31, 2006.

The Lease provides that the effective termination date was the 180th day following receipt of the notice. Accordingly, as held in connection with the decision on Preliminary Injunction, it was not possible for the tenant to give an effective notice that would result in a termination date earlier than the 180th day following the day after the end of the Fifth Rental Year.

So long as the triggering event for the 180 day pre-termination period cannot be advanced prior to September 1, 2006, Landlord sustained no detriment whatsoever from the fact that it had reviewed letters stating Bean's intention to terminate the Lease prior to September 1, 2006. The only result was that Landlord had more, not less, time then it was entitled to under the Lease to seek a new tenant for the premises at issue.

Thus, the Court finds that Landlord had been given advance written notice of Bean's intention to vacate by letter received approximately August 1, 2006, confirmed by oral statements and the letter received approximately August 22, 2006. However, the notice was not effective until September 1, 2006, the date upon which the condition for giving such notice first met.[5]

---

[5]  As noted above, the condition for giving notice was the conclusion of the Fifth Rental Year with Bean's gross sales not exceeding $3,500,000.

On September 1, 2006, Landlord was fully aware of Bean's continued intention to terminate the lease and had in its possession the advance written notice required under the Lease. Therefore, it was on that date that the advance written notice became effective and, thus, was validly given.

Accordingly, the Court holds that, Landlord was effectively given the advance written notice required by the Lease on September 1, 2006, and, therefore, that the Lease term was terminated effective 180 days after September 1, 2006.

The Court has interpreted the Lease in a manner that renders Bean's notice effective under its terms. The Court further states that even if Bean were not technically in compliance with the Lease, it would nevertheless enforce Bean's termination option exercise under the circumstances presented by the instant case.

There is, apparently, no Maryland precedent involving the effectiveness of a lease renewal/termination notice (or analogous contract option notice) given prior to, as distinct from later than, technically required. However, it appears that precedent from other jurisdictions supports the conclusion that, in the circumstances here presented, the Court could grant relief to Bean from an inadvertent and harmless early notice.

In <u>Goodyear Tire and Rubber Co. v. KIN Properties</u>, a tenant had the option to extend the term of a lease. The option was exercisable "not less than 6 months nor more than 9 months prior to" the end of a term. 647 A.2d 478, 479 (N.J. Super. 1994)   The

11

**lease term at issue ended November 31, 1991, so that the option exercise window was February through May of 1991. The tenant inadvertently sent the notice in May, 1990, some ten months early. The <u>Goodyear</u> court held that the trial court had not abused its discretion to enforce the technically early renewal option because the tenant inadvertently sent the notice prematurely, the landlord was fully aware that tenant intended to renew and the landlord was not disadvantaged, other than by loss of the windfall that would result from enforcing the strict terms of the lease. <u>Id.</u> at 484.**

As stated by the <u>Goodyear</u> court:

> There is a vast difference between a substantially late exercise of an option to renew in which case the option expires and is lost, and the early exercise of an option which merely permits the parties to solidify the terms of the extension period at an earlier time. There is a purpose to the cutoff date for the exercise of the option. A tenant is generally required to give ample notice of the exercise of an option to renew a lease so that the landlord is not forced to wait until the last day of the lease term before he is informed whether the tenant wishes to remain on the premises. This requirement substantially reduces the risk that the premises will remain unoccupied for an indefinite period in the event that the renewal option is not exercised. The plaintiff herein satisfied that purpose. There appears to be no discernable purpose to the earlier date of a window time period, such as the one herein, other than to provide a trap for the unwary.

<u>Id.</u> at 481.

The <u>Goodyear</u> court further noted:

12

> We have found only one case in the United States involving a premature notice to exercise an option to renew a lease. In <u>Cutshaw v. Campbell</u>,[] the court stated that it did not matter that a notice was sent sixty days prior to the termination date of a lease of real property which stated that plaintiff/tenant 'had a right to renew . . . the lease . . . by giving thirty days notice of their intention to do so . . . .' The landlord contended that the notice had been given too early. However, even though the notice was deemed timely, the court concluded that it was insufficient for other reasons.

<u>Id.</u> at 482 (citations omitted).

Accordingly, it appears that the only courts to have considered an early option exercise under conditions analogous to those presented herein have concluded that a trial court could treat the early exercise as timely.

This Court concludes that, even if the Lease were construed to render Bean's notice technically ineffective, the Maryland Court of Appeals - if presented with the issue - would hold that a trial court could properly exercise its discretion to enforce Bean's exercise of its option to renew under the circumstances here presented.

Accordingly, the Court holds that Bean's notice of termination was effective under the terms of the lease and that, even if it were not technically effective, the Court would exercise its discretion to enforce Bean's exercise of the option.

B.  <u>Clearance Center Issues</u>

13

The Court does not find that a default in regard to the product and pricing requirements would cause Bean to forfeit its option to terminate the Lease under Rider ¶ 10. Moreover, in the instant case[6], Landlord is not seeking monetary damages for Bean's alleged failure to meet the product and pricing requirements of the Lease. Thus, the product and pricing issues would be material only if Bean's notice were held ineffective and Bean was required to continue to operate a store under the Lease.

Accordingly, the Court need not, and will not, address the product and pricing issues herein.

## III. CONCLUSION

For the foregoing reasons:

1. The Court holds for Defendant.

2. The Court shall, for reasons stated on the record of proceedings, defer termination of the Preliminary Injunction until March 26, 2007.

3. Judgment shall be entered by separate Order.

SO DECIDED, on **Friday, March 9, 2007**.

                                                / s /
                                      Marvin J. Garbis
                            United States District Judge

---

[6] The Court is not addressing any question of whether Landlord could seek such monetary damages by filing a new lawsuit or requesting leave to seek such damages in the instant case.